IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRIANNA PARKER,** | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| **BILL MELTON TRUCKING CO., and** | § | **CAUSE NUMBER: 3:15-cv-02528-G** |
| **FRANKIE THACKER, AS THE** | § | |
| **REPRESENTATIVE OF THE ESTATE** | § | |
| **OF CHARLES EDWARD THACKER,** | § | |
| | § | **JURY DEMANDED** |
| *Defendants*. | § | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

COME NOW Brianna Parker complaining of Bill Melton Trucking Inc. and the estate of Charles Edward Thacker (collectively, "Defendants") and for cause of action would respectfully show the Court as follows:

**I.**
**PARTIES**

1.  Plaintiff Brianna Parker (Rev. Parker) is an individual who resides in Dallas County, Texas.

2.  Defendant Bill Melton Trucking Inc. ("Melton Trucking") is, upon information and belief, an Arkansas company that may be served by serving its registered agent, Carolyn Melton, 250 Somerset Lane, Cord, AR 72524.

3.  Defendant Frankie Thacker, as the Representative for the Estate of Charles Edward Thacker ("Thacker") is, upon information and belief, an individual resident of Arkansas who may be served at 112 N. Porter St., Stuttgart, AR 72160.

## II.
### JURISDICTION AND VENUE

4. Personal jurisdiction is proper in this Court pursuant to the Court's October 9, 2015, Order that the Court has subject matter jurisdiction under 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. Venue is proper in this Dallas County because all or a substantial part of the events or omissions giving rise to this claim occurred in Dallas County, TX.

## III.
### FACTUAL ALLEGATIONS

6. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

7. On May 22, 2013, Rev. Parker had just finished visiting with a fellow pastor and was heading back to her church, Friendship West Baptist Church, for bible study. She and one of her students were in Rev. Parker's Pontiac Sunfire, traveling southbound on Interstate Highway 35E ("IH-35E") near Interstate Highway 30 ("IH-30").

8. In the lane adjacent to the lane in which Rev. Parker's automobile was traveling was a Freightliner tractor (the "Melton Tractor") that Thacker was driving, upon information and belief, on behalf of Melton Trucking. Alternatively, Melton Trucking operated as a lessor, having leased the tractor-trailer to Thacker.

9. At the time of the collision, Thacker was traveling southbound on IH-35E near the intersection at IH-30.

10. The Melton Tractor was towing a flatbed trailer that had three (3) large forklifts loaded upon the trailer. Upon information and belief, Melton Trucking was towing the forklifts throughout Texas and Arkansas and was engaged in interstate commerce.

11. When the Melton Tractor and flatbed attempted to pass under the IH-30 overpass, the load was loose and stacked too high.  These facts, as well as Thacker's speed, caused the forklifts to strike the IH-30 overpass. This overpass, upon information and belief, is approximately 14.7 feet high.

12. The Melton Tractor and flatbed rolled over onto its right side into the center right lane.  These forces caused the load to become further unfastened and led to the tractor and trailer drifting into the lane that was occupied by Rev. Parker's automobile.

13. The driver, Thacker, was unable to rebalance the trailer, which led to the load toppling onto Rev. Parker's automobile.

14. The Melton Tractor, flatbed trailer and the forklifts also completely rolled over onto the freeway.

15. The violent impact of the tractor-trailer and the massive forklifts upon Rev. Parker's automobile caused her vehicle eventually to collide with another vehicle on the roadway before Rev. Parker's Sunfire came to a final rest.

16. Rev. Parker was rendered momentarily unconscious as a result of the incident. Her automobile was eventually rendered totaled.

17. Since that day, Rev. Parker has had to undergo medical and psychological treatment, all stemming from this collision.

## IV.
## CAUSES OF ACTION

**Count I:   Negligence, Negligence per se, Strict Liability and Gross Negligence**

18.     Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

19.     Defendants had a duty to Rev. Parker to provide a safely designed and manufactured product.

20.     Defendants also had a duty to warn consumers of the true nature of the defective design of the Defendants' products.

21.     Defendants had a duty to operate a safe tractor and trailer on the highways where the flatbed's load was towed.

22.     At the time of the loading of the cargo, neither Defendant inspected the load's height or tested the adequacy of the load straps when they decided jointly to tow the loaded flatbed from Arkansas throughout Texas. At the time Thacker picked up the trailer, Defendants knew or should have known that the tractor, trailer, and load had not passed inspection that is required by state and federal regulations including, but not limited to, 49 CFR §396.

23.     Upon information and belief, Thacker also failed to maintain an assured clear distance between his tractor-trailer and other vehicles on the road; failed to keep a proper lookout; failed to avoid an overpass that could not accommodate his load; and failed to maintain safe instrumentalities on the roadways.  These actions contributed to the cause of the collision.

24.     While at the scene of the collision, Thacker was cited for having an "oversized vehicle or load."

25.     Upon information and belief, Defendants did not have or implement a safety prevention program to ensure compliance with state and federal regulations including, but not

limited to, Section 385 of the FMCSR Safety Provisions. Such a policy could have prevented Thacker from operating the tractor and trailer on the highways.

26. The tractor, flatbed trailer and load were defectively designed and/or maintained so as to render them unreasonably dangerous. This was a substantial factor in bringing about an injury during the collision, and without which the injury would not have occurred.

27. As a lessor of the trailer, Melton Trucking is strictly liable for installing and/or maintaining the inadequate tractor, flatbed trailer and load, and placing these devices into the stream of commerce.

28. In addition to the above, by their actions and omissions, Defendants also breached their duty and were negligent, grossly negligent and/or acted with malice in at least the following regards:

    a. Using improper tie-down devices and other conduct, all in violation of state and federal regulations including, but not limited to, sections 393.100 through 393.136 of the Federal Motor Carrier Safety Regulations;

    b. Failing to ensure that the tractor, flatbed trailer and load were situated "and maintained" in compliance with the requirements of state and federal regulations including, but not limited to, 49 CFR §393.86. The regulations provide that "every motor carrier, and its officers, agents, drivers, representatives, and employees directly concerned with the installation and maintenance of equipment and accessories" must comply with the safety requirements and specifications outlined therein;

    c. Failing to observe clearly visible warning sign concerning the low structure, failing to take opportunity to detour low structure, and failing to take any evasive action to avoid striking the overhead structure, all in violation of state and federal regulations;

    d. Failure to ensure that the tractor, flatbed trailer and load had been properly and timely inspected as required by state and federal regulations including, but not limited to, 49 CFR §396.17 and §396.21;

    e. Violation of the general duty under state and federal regulations including, but not limited to, 49 CFR §396.3, of a trucking company to maintain its vehicles and trailers in good working order, to maintain repair records and

       inspection reports, and to make periodic inspections of each vehicle and trailer;

f. Failure to properly inspect the tractor, flatbed trailer and load before placing the objects on the highway, as required by state and federal regulations including, but not limited to, CFR §396.13;

g. Driving a tractor and flatbed with a load that was illegally secured and unsafe to drive under state and federal regulations or standards including, but not limited to, Sections 2 and 3 of the Commercial Motor Vehicle Handbook;

h. Negligently servicing, repairing, installing and/or maintaining the tractor, flatbed trailer and load;

i. Failure to properly maintain and service the tractor, flatbed trailer and load;

j. Failing to adequately train Thacker how to test for a defective tractor, flatbed trailer and load and failing to warn Thacker of the dangers of operating the trailer without ensuring the adequacy of the straps and other devices securing the load;

k. Failing to exercise reasonable care to discover the dangerous condition or character of the tractor, flatbed trailer and load before allowing the trailer to be used on the roadways;

l. Failing to warn consumers of the unreasonably dangerous nature of the tractor, flatbed trailer and load;

m. Entrusting the tractor, flatbed trailer and load to Thacker, an incompetent or reckless driver, whom the owner knew or should have known was unlicensed, incompetent, or reckless, and whose negligence on the day of the collision was one of the proximate causes of the collision;

n. Driving (and permitting employee to drive) at a high rate of speed under the conditions; and

o. Failing to exercise that degree of care that other drivers would have exercised in maintaining an assured clear distance between vehicles, keeping a proper lookout, stopping safely and/or operating a dangerous instrumentality on the roadways.

29. Defendants' conduct and/or omissions identified above constitute a breach of their duties owed by statutory provision, common law and other authorities, the breach of which proximately caused damages.

30. Defendants' conduct described above constitutes strict liability, negligence, gross negligence, recklessness, and/or intentional misconduct.

### Count II: Infliction of Emotional Distress and Mental Anguish

31. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

32. In addition to Plaintiff's physical pain and suffering, Defendants' breach of duty directly and proximately caused Plaintiff to suffer significant psychological difficulties including, but not limited to, psychological distress, depression, anxiety, back depression inventory and PTSD. She has been prescribed psychotropic medications and is undergoing treatment.

33. Defendants knew or should have known Defendants' conduct involved an unreasonable risk of causing emotional distress to Plaintiff. Defendants' conduct caused Plaintiff to suffer medically diagnosable and significant emotional distress.

34. Defendants' acts and omissions also demonstrated a conscious disregard for Plaintiff's emotional well-being and safety, as well as the emotional well-being and safety of other travelers on the roadways where Defendants' tractor-trailer traveled.

### Count III: Vicarious Liability

35. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

36. Both Melton Trucking and Thacker are vicariously liable for the negligent inspection and negligent operation of the tractor and trailer to the extent this negligence occurred in Thacker's course of employment with Melton Trucking and/or when the trailer was under lease to or from Melton Trucking. Upon information and belief, Thacker was acting (e.g. operating the tractor and trailer) within the general authority given to him by Melton Trucking, in furtherance of its business and for the accomplishment of the object for which he was employed.

**Count IV:   Spoliation**

37. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

38. The collision involved the Melton tractor, the flatbed trailer, the forklifts on the flatbed, and all mechanisms that were used to secure the load. Accordingly, each of these items was material to the ensuing litigation, and should have been preserved. Similarly, all repair, maintenance, and loading documentation should have been preserved. Shortly after the collision, by way of letter from Plaintiff's counsel, both Defendants were informed of their duty to preserve evidence in this matter. Despite knowing of the importance of preserving relevant evidence, Defendants, upon information and belief, conspired to conceal valuable evidence, some of which has now been lost, modified, or intentionally misplaced. Plaintiff was never provided with access to these items.

39. An inspection of these items would have revealed that the tractor, trailer and load were improperly designed, and/or dangerously loaded while in Defendants' possession, and Defendants knew or should have known of the inadequacy Defendants' load securement process.

40. These facts surrounding the collision establish that (a) there was a duty to preserve evidence; (b) Defendants negligently or intentionally (collectively) spoliated the Melton tractor, the flatbed trailer, the forklifts that were on the flatbed, and all mechanisms that were used to secure the load, as well as related design, repair/replacement records; and (c) Defendants' spoliation has prejudiced Plaintiff's ability to present her case.

**Count V:   Damages**

41. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

42. Defendants' acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff, for which Plaintiff seeks recovery through this Petition:

    a. Actual damages;
    b. Lost wages;
    c. Past, present, and future medical expenses for physical, emotional and mental health;
    d. Diminished earning power or earning capacity in the past and in the future;
    e. Damages awarded for the purpose of compensating Plaintiff for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind in the past and the future;
    f. All other damages naturally and/or incidentally flowing from Defendants' conduct and/or omissions;
    g. Exemplary and punitive damages as well as reasonable attorneys' fees and costs of court;
    h. Prejudgment interest; and
    i. Post judgment interest.

43. Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

**Count VI: Exemplary Damages**

44. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

45. Punitive damages are warranted against Defendants for blatantly ignoring safety provisions of the FMSCR and other federal and state laws, as well as ignoring industry research establishing the inadequacy of the load securement devices, the result of which led to this tragic collision. Defendants should not have allowed the defective or inadequate instrumentalities to have been placed on the highways. This and other conduct constitutes gross negligence, for which exemplary or punitive damages should be awarded.

46. Plaintiff, therefore, seeks exemplary damages for injuries caused by Defendants' gross negligence under Texas Civil Practice & Remedies Code section 41.003(a)(3), as defined by Section 41.001(11). Plaintiff also seeks exemplary damages as a result of Defendants' willful acts or omissions or gross neglect, as provided in Texas Constitution and Texas Civil Practice & Remedies Code. Finally, Plaintiff seeks exemplary damages under any and all other statutes, acts, or law providing for such damages.

### Count VII:   Attorneys' Fees

47. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

48. As a result of Defendants' acts and omissions, Plaintiff has retained counsel and seeks reimbursement for reasonable attorney fees, as authorized by applicable law and in equity.

### JURY DEMAND

49. Plaintiff demands a trial by jury as to all claims and all issues properly triable thereby.

### PRAYER

Wherefore, Premises Considered, Plaintiff prays that Defendants be cited to appear and answer herein and, upon final trial hereof, that Plaintiff have and recover from Defendants all allowable damages, exemplary damages, pre and post-judgment interest, costs of court, attorney's fees, and such other and further relief, both general and special, at law and in equity, to which they may be justly entitled.

## CERTIFICATE OF SERVICE

      I hereby certify that on November 2, 2015, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

                                               /s/ Aubrey "Nick" Pittman
                                               Aubrey "Nick" Pittman